IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
COLUMBIA DIVISION

| | | |
|---|---|---|
| John D. Lisotto, | ) | C/A No. 3:13-2407-MGL-PJG |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | **REPORT AND RECOMMENDATION** |
| | ) | |
| New Prime, Inc., *d/b/a Prime Inc.*, | ) | |
| | ) | |
| Defendant. | ) | |
| _____ | ) | |

The plaintiff, John D. Lisotto ("Lisotto"), filed this action pursuant to the Americans with Disabilities Act ("ADA"), 42 U.S.C. §§ 12101, et seq., against the defendant, New Prime, Inc. ("Prime"). This matter is before the court pursuant to 28 U.S.C. § 636(b) and Local Civil Rule 73.02(B)(2) DSC for a Report and Recommendation on the defendant's motion to dismiss. (ECF Nos. 6 & 7.) Lisotto filed a response in opposition and a motion to amend his Complaint. (ECF Nos. 12 & 14.) Prime filed a reply memorandum in connection with its motion to dismiss (ECF No. 13) and a response in opposition to Lisotto's motion to amend (ECF No. 15). Lisotto also filed a reply in connection with his motion to amend. (ECF No. 19.) Having reviewed the parties' submissions and the applicable law, the court finds that the defendant's motion to dismiss should be granted.

**BACKGROUND**

This matter arises out of Lisotto's attempt to secure employment with Prime as a commercial truck driver. When he applied, Lisotto was taking a medication containing amphetamines as prescribed by his physician to treat narcolepsy, as he had for thirty years. Lisotto presented Prime

with a medical examiner's certificate as required by the federal Department of Transportation ("DOT"). The examining physician on behalf of Prime, Dr. Abraham, informed Lisotto that he needed to change his medication to an alternate treatment for that disorder, which Lisotto did upon consultation with his treating physician, Dr. Crook. However, Lisotto received a phone call from Prime's Medical Review Officer ("MRO"), Dr. Mauldin, informing him that he was ineligible for hire because he had tested positive for amphetamines. Lisotto unsuccessfully attempted to resolve the issue and sought reconsideration from Dr. Mauldin. Ultimately, Dr. Mauldin responded by letter, informing Lisotto that "[e]ven though you had a prescription for amphetamines, in my opinion you have a disqualifying medical condition since narcolepsy is a safety concern." (Compl. ¶ 26, ECF No. 1 at 7.) Lisotto then filed an administrative charge with the U.S. Equal Employment Opportunity Commission asserting discrimination based on disability. This action followed.

## DISCUSSION

**A.     Motion to Dismiss**

A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) examines the legal sufficiency of the facts alleged on the face of the plaintiff's complaint. Edwards v. City of Goldsboro, 178 F.3d 231, 243 (4th Cir. 1999). To survive a Rule 12(b)(6) motion, "[f]actual allegations must be enough to raise a right to relief above the speculative level." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007). The "complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Twombly, 550 U.S. at 570). A claim is facially plausible when the factual content allows the court to reasonably infer that the defendant is liable for the misconduct alleged.



Id. When considering a motion to dismiss, the court must accept as true all of the factual allegations contained in the complaint. Erickson v. Pardus, 551 U.S. 89, 94 (2007).

**B.     Discussion**

The ADA prohibits employment discrimination "against a qualified individual on the basis of disability." 42 U.S.C. § 12112(a). To establish a *prima facie* case of discriminatory failure to hire based upon a disability, a plaintiff must show that he (1) is disabled within the meaning of the ADA; (2) applied for the vacant position; (3) was qualified for the position; and (4) was rejected for the position under circumstance giving rise to an inference of unlawful discrimination. See Allen v. Johnson, C/A No. DKC 09-1503, 2010 WL 2431022, at *3 (D. Md. June 10, 2010) (citing Anderson v. Westinghouse Savannah River Co., 406 F.3d 248, 268 (4th Cir. 2005); Mackey v. Shalala, 360 F.3d 463, 468 (4th Cir. 2004)). A qualified individual is "an individual who, with or without reasonable accommodation, can perform the essential functions of the employment position that such individual holds or desires." 42 U.S.C. § 12111(8). To resolve whether a person is a qualified individual, a court must consider whether that person is able to perform the essential functions of the job in question, and if not, whether the person could do the job with reasonable accommodation. Tyndall v. Nat'l Educ. Ctrs., Inc. of Cal., 31 F.3d 209, 213 (4th Cir. 1994) (citing Chandler v. City of Dallas, 2 F.3d 1385, 1393-94 (5th Cir. 1993)). Further, under the ADA "disability" includes:

> (A) a physical or mental impairment that substantially limits one or more major life activities of such individual;
> (B) a record of such an impairment; or
> (C) being regarded as having such an impairment . . . .

42 U.S.C. § 12102(1).

The United States Supreme Court has recognized that certain rights and remedies under the ADA may be limited by other federal laws, specifically the safety standards established by the federal Department of Transportation ("DOT"). Albertson's, Inc. v. Kirkingburg, 527 U.S. 555, 573 (1999). The Supreme Court noted legislative history of the ADA stating that "a person with a disability applying for or currently holding a job subject to [DOT standards for drivers] must be able to satisfy these physical qualification standards in order to be considered a qualified individual with a disability under title I of this legislation." Id. (alteration in original) (internal quotation marks and citation omitted). The ADA itself recognizes that employers may establish job qualification standards that ultimately result in the denial of employment to disabled persons, and the ADA regulations provide a defense to employers relying on federal safety standards. See 42 U.S.C. § 12113; 29 C.F.R. § 1630.15(e); see also Myers v. J.B. Hunt Transp., Inc., C/A No. 1:05-cv-717, 2006 WL 3479001, at *3 (M.D.N.C. Nov. 30, 2006). Pertinent here, DOT regulations require every person seeking to drive commercial motor vehicles to pass a DOT physical examination. See 49 C.F.R. § 391.41. A "medical examiner is required to certify that the driver does not have any physical, mental, or organic condition that might affect the driver's ability to operate a commercial motor vehicle safely." 49 C.F.R. § 391.43(f); see also Myers, 2006 WL 3479001, at *3.

1. **Exhaustion of Department of Transportation Remedies**

Before filing suit under the ADA, a plaintiff must exhaust his administrative remedies by bringing a charge with the EEOC. See 42 U.S.C. § 12117(a) (indicating that the procedures of the ADA are identical to those provided in Title VII); see also Smith v. First Union Nat'l Bank, 202 F.3d 234, 247 (4th Cir. 2000). In cases such as the one at bar where the plaintiff is a commercial truck driver subject to federal regulation by DOT, courts appear to have uniformly held that before



bringing an ADA claim in federal court, such a plaintiff generally must also exhaust administrative remedies through that agency.  See, e.g., Harris v. P.A.M. Transp., Inc., 339 F.3d 635 (8th Cir. 2003); Campbell v. Fed. Express Corp., 918 F. Supp. 912, 918 (D. Md. 1996); Prado v. Cont'l Air Transp. Co., 982 F. Supp. 1304, 1308 (N.D. Ill. 1997); Hill v. Houff Transfer, Inc., C/A No. 3:12CV357-JRS, 2012 WL 5194080, at *3-4 (E.D. Va. Oct. 19, 2012) (all recognizing that commercial driver plaintiffs had to exhaust administrative remedies available through 49 C.F.R. § 391.47(b)(2) before bringing an ADA claim).

Here, Lisotto filed an administrative charge with the EEOC and obtained a right-to-sue letter but did not seek resolution of the issue of his medical qualifications through DOT.  Lisotto argues first that this process did not apply to him because § 391.47(b)(2) is available only when there are conflicting medical opinions between the driver's own physician and the employer's reviewing physician, and that in his case, his treating physician, Dr. Crook, and Prime's examining physician, Dr. Abraham, agreed that he was medically qualified to drive commercially.  The court disagrees. The crux of the dispute is that Dr. Mauldin, Prime's MRO, disagreed with the physicians—including Dr. Crook—who opined that Lisotto was medically qualified.  Accordingly, the dispute appears to fall within the ambit of § 391.47.  See Harris, 339 F.3d at 639 (rejecting plaintiff driver's argument that the DOT procedures did not apply because the medical disagreement was between the third-party contractor's examining physician and the employer's physician); see also Hill, 2012 WL 5194080, at *3 (concluding that the procedures in § 391.47 are available "in all cases where physicians for the driver and the motor carrier disagree" and apply notwithstanding additional disagreements between the motor carrier's own doctors).

Next Lisotto contends that even if § 391.47(b)(2) encompassed his situation, his failure to exhaust his DOT remedies should be excused for two reasons: first, because exhaustion of the DOT remedy would be futile, and second, because DOT cannot provide an adequate remedy.[1] (See Pl.'s Mem. Opp'n Summ. J. at 10-14, ECF No. 12 at 10-14.) Again, the court disagrees.

As to futility, Lisotto contends that more recent tests indicate that he does not suffer from narcolepsy but rather has sleep apnea, which is currently controlled with a CPAP machine. Thus, he argues, exhaustion would be futile because there are no medical opinions, much less conflicting ones, regarding his *current* medical qualifications to drive commercially. However, as Prime points out, the relevant time period for examining whether a driver is qualified is at the time of the alleged discrimination. See Pollard v. High's of Baltimore, Inc., 281 F.3d 462, 470 n.3 (4th Cir. 2002). When the alleged discrimination occurred, DOT could have resolved the issue of Lisotto's medical qualifications to drive commercially based on the dispute that existed at the time. Accordingly, the court cannot say that exhaustion would have been futile. See also Myers v. Hose, 50 F.3d 278, 283 (4th Cir. 1995) (observing that the ADA regulations "contain no reference to an individual's *future* ability to perform the essential functions of his position.") (emphasis in original). Courts have recognized that when a plaintiff bypasses an administrative remedy and proceeds directly to court,

---

[1] The court observes that while in the Fourth Circuit the failure to exhaust administrative remedies through the *EEOC* presents a jurisdictional bar to a discrimination claim in federal court, see Jones v. Calvert Group, Ltd., 551 F.3d 297 (4th Cir. 2009), courts addressing the DOT regulation at issue appear to be in agreement that the failure to exhaust *DOT* remedies is non-jurisdictional. See Hill, 2012 WL 5194080; see also Brockmeier v. Greater Dayton Reg'l Transit Auth., No. 3:12-cv-327, 2013 WL 4647139, at *3 (S.D. Ohio Aug. 29, 2013) (finding the DOT remedy to be non-jurisdictional); Hensley v. United Parcel Serv., Inc., C/A No. 1:13-cv-101-MR-DSC, 2014 WL 903166 (W.D.N.C. Mar. 7, 2014) (not expressly addressing jurisdiction but staying, rather than dismissing, a case asserting an ADA claim where the plaintiff's administrative action at DOT pursuant to § 391.47 was still pending).

he runs the risk that the requisite administrative remedy that used to be available will no longer be available, and judicial review may be then be barred. Cf. Reichart v. Prison Health Serv., SCI-Camp Hill C/A No. 1:CV-11-1992, 2013 WL 4855380, at *5 (M.D. Pa. 2013) ("A prisoner cannot bypass available administrative remedies, either by failing to properly exhaust the prison's administrative remedy process, or by waiting until such remedies are no longer available.") (citing Woodford v. Ngo, 548 U.S. 81, 95 (2006)). This is so even though exhaustion in the circumstances is not a jurisdictional prerequisite. See id. (discussing exhaustion under the Prison Litigation Reform Act).

Lisotto also contends, relying on Hill, 2012 WL 5194080, that exhaustion through DOT should be excused because it cannot afford him an adequate remedy. Essentially, he argues that he seeks damages for discrimination, which DOT cannot provide. (Pl.'s Mem. Opp'n Summ. J. at 13, ECF No. 12 at 13.) Because this fact distinguishes Lisotto from virtually no other commercial driver plaintiff seeking relief under the ADA, the court concludes that exhaustion should not be excused on this basis.

### 2.   Qualified Individual

Alternatively, even if Lisotto's failure to exhaust his DOT remedies did not warrant dismissal of his ADA claim, the court concludes that Prime's motion to dismiss should nonetheless be granted because the Complaint shows that Lisotto cannot meet a required element of his claim as a matter of law. As discussed above, to set forth an ADA claim, Lisotto must allege facts showing that he was a qualified individual under the ADA. See 42 U.S.C. § 12111(8). This he cannot do, because the allegations demonstrate that at the time of the alleged discrimination, Lisotto did not have the requisite DOT medical clearance to be a commercial driver. See 49 C.F.R. § 391.41(a) (providing that a person "must not operate a commercial motor vehicle" without a "medical examiner's

certificate that [the person] is physically qualified"); Harris, 339 F.3d at 638-39 (affirming dismissal of commercial truck driver's ADA claim because he could not prove an essential element of the *prima facie* case as he did not have a valid medical examiner's certificate of physical qualification despite initially presenting one to the carrier because the driver had not submitted a subsequent dispute about his medical qualifications to DOT to resolve under § 391.47(b)(2)); see also Bay v. Cassens Transp. Co., 212 F.3d 969 (7th Cir. 2000) (affirming summary judgment for the employer on an ADA claim because the driver could not make out an element of his claim where the driver could not show he had a valid DOT medical clearance); King v. Mrs. Grissom's Salads, Inc., 187 F.3d 636, 1999 WL 552512 (6th Cir. July 22, 1999) (affirming summary judgment because plaintiff driver could not show he was a qualified individual under the ADA because he had conflicting physicians' opinions about his medical qualifications and failed to seek resolution under § 391.47). Accordingly, Lisotto cannot establish a required element of his ADA claim and therefore his Complaint fails to state a plausible claim for relief.

## RECOMMENDATION

For the foregoing reasons, the court recommends that Prime's motion to dismiss (ECF No. 6) be granted.[2]

July 21, 2014  
Columbia, South Carolina

_____  
Paige J. Gossett  
UNITED STATES MAGISTRATE JUDGE

*The parties' attention is directed to the important notice on the next page.*

---

[2] In light of this recommendation, the court denies Lisotto's motion to amend his Complaint without prejudice to pursue his proposed additional claims in state court. Cf. 28 U.S.C. § 1367(c) (allowing district court to decline to exercise supplemental jurisdiction over state law claims when the federal claims have been dismissed).

**Notice of Right to File Objections to Report and Recommendation**

The parties are advised that they may file specific written objections to this Report and Recommendation with the District Judge. Objections must specifically identify the portions of the Report and Recommendation to which objections are made and the basis for such objections. "[I]n the absence of a timely filed objection, a district court need not conduct a de novo review, but instead must 'only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation.' " Diamond v. Colonial Life & Acc. Ins. Co., 416 F.3d 310 (4th Cir. 2005) (quoting Fed. R. Civ. P. 72 advisory committee's note).

Specific written objections must be filed within fourteen (14) days of the date of service of this Report and Recommendation. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); see Fed. R. Civ. P. 6(a), (d). Filing by mail pursuant to Federal Rule of Civil Procedure 5 may be accomplished by mailing objections to:

> Robin L. Blume, Clerk
> United States District Court
> 901 Richland Street
> Columbia, South Carolina 29201

**Failure to timely file specific written objections to this Report and Recommendation will result in waiver of the right to appeal from a judgment of the District Court based upon such Recommendation.** 28 U.S.C. § 636(b)(1); Thomas v. Arn, 474 U.S. 140 (1985); Wright v. Collins, 766 F.2d 841 (4th Cir. 1985); United States v. Schronce, 727 F.2d 91 (4th Cir. 1984).